[No. S132605. Aug. 16, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
AARON PATRICK SLOAN, Defendant and Appellant.

COUNSEL

John Doyle and William J. Arzbaecher, under appointments by the Supreme Court, for Defendant and Appellant.

Bill Lockyer and Edmund G. Brown, Jr., Attorneys General, Manuel M. Medeiros, State Solicitor General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, John G. McLean, Janet Neeley and George M. Hendrickson, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**BAXTER, J.**—May enhancement allegations be considered for purposes of the rule prohibiting multiple convictions based on necessarily included offenses? (See *People v. Pearson* (1986) 42 Cal.3d 351, 355 [228 Cal.Rptr. 509, 721 P.2d 595].) Our recent decision in *People v. Reed* (2006) 38 Cal.4th 1224 [45 Cal.Rptr.3d 353, 137 P.3d 184] (*Reed*), filed after the Court of Appeal decided this case, effectively answers the question in the negative. *Reed* held that "[c]ourts should consider the statutory elements and accusatory pleading in deciding whether a defendant received notice, and therefore may be convicted, of an *uncharged* crime, but only the statutory elements in deciding whether a defendant may be convicted of multiple *charged* crimes."

(*Id.* at p. 1231.) Like *Reed*, this case involves multiple *charged* crimes. Accordingly, the statutory or legal elements test applies. Under that test, enhancements are neither recognized nor considered in determining whether the defendant can be convicted of multiple charged crimes based on necessarily included offenses. This result is also in accord with the long-standing rule that enhancements may not be considered as part of an accusatory pleading for purposes of identifying lesser included offenses. (See *People v. Wolcott* (1983) 34 Cal.3d 92, 96, 100–101 [192 Cal.Rptr. 748, 665 P.2d 520] (*Wolcott*).)

The Court of Appeal in this matter relied on an additional factor, one not at issue in *Reed*—the potential for *future multiple punishment* arising from multiple convictions—in support of its conclusion that the enhancement allegations here in question must be considered in determining whether the rule against multiple convictions based on necessarily included offenses applies. As will be explained, however, neither the ban on multiple punishment found in Penal Code section 654,[1] nor principles of federal double jeopardy protection, require us to draw an exception from *Reed*'s bright-line test in this case simply because multiple convictions otherwise permitted under section 954 and the legal elements test in theory might give rise to impermissible multiple punishment in future criminal proceedings should the defendant reoffend upon release from prison. The Legislature has clearly provided that a person may be convicted of, although not punished for, more than one crime arising out of the same act or course of conduct. (§§ 654, 954.) There is no evidence before us that defendant has reoffended or faces multiple punishment due to recidivist sentencing in any unrelated criminal proceeding. The argument that improper multiple punishment might stem from *future* use of multiple convictions under recidivist sentencing statutes like the "Three Strikes" law raises a question that is entirely speculative on these facts and must await a case in which it is squarely presented. (See *People v. Sanchez* (2001) 24 Cal.4th 983, 993 [103 Cal.Rptr.2d 698, 16 P.3d 118].)

We therefore conclude the judgment of the Court of Appeal, which is inconsistent with the rule announced in *Reed*, must be reversed.

### FACTS AND PROCEDURAL BACKGROUND

As a result of a domestic violence incident on May 13, 2001, during which defendant Aaron Patrick Sloan threw his wife to the ground, kicked her, and broke her leg, defendant was charged with and convicted of willful infliction of corporal injury on a spouse resulting in a traumatic condition, with a prior

---

[1] All further statutory citations are to the Penal Code unless otherwise indicated.

conviction for the same offense (§ 273.5, subd. (e)(1)); assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(1)); battery with serious bodily injury (§ 243, subd. (d)); and dissuading a witness (§ 136.1, subd. (b)(1)). Enhancement allegations for personal infliction of great bodily injury under circumstances involving domestic violence were found true under the corporal injury and aggravated assault counts. (§ 12022.7, subd. (e).) An allegation that defendant personally inflicted great bodily injury on a person who was not an accomplice was found true under the battery with serious bodily injury count, making that offense, like the aggravated assault offense, a serious felony within the meaning of section 1192.7, subdivision (c)(8).

Defendant was sentenced to prison for the upper term of five years on count I (corporal injury on a spouse with a prior) plus four years for the great bodily injury enhancement under that count, and a consecutive term of eight months (one-third of the middle term) on count IV (dissuading a witness), for an aggregate prison sentence of nine years eight months. Execution of sentence on counts II (aggravated assault with great bodily injury) and III (battery with serious bodily injury) was stayed pursuant to section 654.

In a partially published opinion, the Court of Appeal affirmed the convictions under counts I and IV, but vacated the convictions under counts II and III on grounds that they violated the rule against multiple convictions based on necessarily included offenses, section 654, and federal double jeopardy principles. We granted both the People's and defendant's petitions for review, designating the People as petitioner in this court for purposes of briefing and argument. (Cal. Rules of Court, former rule 28.2; see now rules 8.512, 8.520.)

DISCUSSION

Defendant contends that under the rule prohibiting multiple convictions based on necessarily included offenses, also known as the multiple conviction rule, he could not be convicted of assault by means of force likely to produce great bodily injury and battery with serious bodily injury (counts II & III) because each can be viewed as a necessarily included offense[2] of willful infliction of corporal injury on a spouse resulting in a traumatic condition (count I) *when enhanced with a great bodily injury finding.* The Court of Appeal agreed, further concluding that conviction of those offenses along with the charged enhancements violated section 654's ban on multiple punishment as well as principles of federal double jeopardy protection.

---

[2] The terms "necessarily included offense" and "lesser included offense" have been used interchangeably by the courts in determining whether the rule against multiple convictions applies in any given case. (See *People v. Ortega* (1998) 19 Cal.4th 686, 704 [80 Cal.Rptr.2d 489, 968 P.2d 48] (dis. opn. of Chin, J.).)

■ As we explained in *Reed, supra,* 38 Cal.4th 1224, "In general, a person may be *convicted* of, although not *punished* for, more than one crime arising out of the same act or course of conduct. 'In California, a single act or course of conduct by a defendant can lead to convictions "of *any number* of the offenses charged." (§ 954, italics added; *People v. Ortega[, supra,]* 19 Cal.4th [at p.] 692 . . . .)' *(People v. Montoya* (2004) 33 Cal.4th 1031, 1034 [16 Cal.Rptr.3d 902, 94 P.3d 1098].) Section 954 generally permits multiple conviction. Section 654 is its counterpart concerning punishment. It prohibits multiple punishment for the same 'act or omission.' When section 954 permits multiple conviction, but section 654 prohibits multiple punishment, the trial court must stay execution of sentence on the convictions for which multiple punishment is prohibited. *(People v. Ortega, supra,* at p. 692; *People v. Pearson[, supra,]* 42 Cal.3d [at pp.] 359–360 . . . .)" *(Reed, supra,* 38 Cal.4th at pp. 1226–1227.)

Here, the trial court stayed execution of sentence on count II (assault by means of force likely to produce great bodily injury) and count III (battery with serious bodily injury) pursuant to section 654. With one exception discussed below—the potential use of those convictions as "strikes" under the Three Strikes law in a subsequent prosecution for any felony (see §§ 1192.7, subd. (c)(8), 667, subds. (b)–(i), 1170.12)—multiple punishment is not at issue here. Instead, we are concerned with multiple convictions. *(Reed, supra,* 38 Cal.4th at p. 1227.)

■ Reed goes on to explain that "A judicially created exception to the general rule permitting multiple conviction 'prohibits multiple convictions based on necessarily included offenses.' *(People v. Montoya, supra,* 33 Cal.4th at p. 1034.) '[I]f a crime cannot be committed without also necessarily committing a lesser offense, the latter is a lesser included offense within the former.' *(People v. Lopez* (1998) 19 Cal.4th 282, 288 [79 Cal.Rptr.2d 195, 965 P.2d 713].) . . . [¶] The question whether one offense is necessarily included in another arises in various contexts. A common one is deciding whether a defendant charged with one crime may be convicted of a lesser *uncharged* crime. A defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime. (§ 1159; *People v. Lohbauer* (1981) 29 Cal.3d 364, 368–369 [173 Cal.Rptr. 453, 627 P.2d 183].) The reason for this rule is settled. ' "This reasoning rests upon a constitutional basis: 'Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial.' [Citation.]" ' *(People v. Lohbauer, supra,* at p. 368.) The required notice is provided as to any charged offense and any lesser offense that is necessarily committed when the charged offense is committed. *(Id.* at pp. 368–369.)" *(Reed, supra,* 38 Cal.4th at p. 1227.)

■ Two tests have traditionally been applied in determining whether an *uncharged* offense is necessarily included within a charged offense—the statutory or legal "elements" test and the "accusatory pleading" test. "Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former. Under the accusatory pleading test, if the facts actually alleged in the accusatory pleading include all of the elements of the lesser offense, the latter is necessarily included in the former. [Citation.]" (*Reed, supra,* 38 Cal.4th at pp. 1227–1228.)

Defendant argues that by willfully inflicting corporal injury resulting in a traumatic condition on his spouse *and personally inflicting great bodily injury* in connection with that offense, he necessarily committed the *charged* offenses of assault by means of force likely to produce great bodily injury and battery with serious bodily injury.[3]

If the conviction of willful infliction of corporal injury on a spouse resulting in a traumatic condition under section 273.5, subdivision (e)(1) (see count I) is considered *without* the great bodily injury enhancement found true under that count, then assault by means of force likely to produce great bodily injury (see count II) is not a necessarily included offense, as the statutory elements of the former offense do not require proof of intent to inflict, or the actual infliction of, *great bodily injury.* Corporal injury resulting in a " 'traumatic condition' " can be a wound or external or internal injury, whether minor or serious. (§ 273.5, subd. (c).) In contrast, if the conviction of willful infliction of corporal injury on a spouse is considered together with the great bodily injury enhancement found true under that count, then all of the statutory elements of assault by means of force likely to produce great bodily injury, of which defendant was also charged and convicted, would be met.

Similarly, " '[s]erious bodily injury' is the essential equivalent of 'great bodily injury' [citation]." (*People v. Otterstein* (1987) 189 Cal.App.3d 1548, 1550 [235 Cal.Rptr. 108]; see *People v. Corning* (1983) 146 Cal.App.3d 83, 90 [194 Cal.Rptr. 27].) Consideration of the great bodily injury enhancement found true under count I would effectively establish the elements of the charged battery with serious bodily injury (see count III), thereby triggering application of the rule against multiple convictions, whereas looking only to the statutory elements of willful infliction of corporal injury on a spouse would not implicate the rule.

---

[3] It should be noted we are here concerned only with *charged* offenses and pled enhancements, not with uncharged lesser offenses or questions involving notice to defendant and the trial court's obligation to instruct sua sponte with regard to uncharged lesser offenses.

In *Reed*, the defendant was charged with being a felon in possession of a firearm (§ 12021, subd. (a)(1)), carrying a concealed firearm (§ 12025, subd. (a)(2)), and carrying a loaded firearm while in a public place (§ 12031, subd. (a)(2)(A)). The information further alleged that the defendant was a convicted felon in connection with the commission of each offense. (*Reed, supra,* 38 Cal.4th at pp. 1226, 1228.) "Accordingly, as charged, defendant could not commit the crimes of carrying a concealed firearm and carrying a loaded firearm while in a public place without also being a felon in possession of a firearm." (*Id.* at p. 1228.)

The rationale and holding of *Reed* is made clear in the following paragraphs of that decision: "In *People v. Pearson, supra,* 42 Cal.3d at page 356, footnote 2, we noted that, 'while an expanded definition of necessarily included offenses [i.e., employing both the elements test *and* the accusatory pleading test] may be appropriate in the context of [conviction of an uncharged offense], there appears little reason to enlarge the meaning of the same phrase as it is used in other situations.' We did not, however, decide the question because the offenses were not included in each other even under the accusatory pleading test. (*Ibid.*) More recently, we again recognized this question but did not decide it. (*People v. Montoya, supra,* 33 Cal.4th at pp. 1035–1036.)

■ "As we noted in *People v. Montoya, supra,* 33 Cal.4th at page 1035, the Court of Appeal decisions that specifically consider this question have concluded that the accusatory pleading test does not apply in deciding whether multiple conviction of charged offenses is proper. (*People v. Miranda* (1994) 21 Cal.App.4th 1464, 1467 [26 Cal.Rptr.2d 610]; *People v. Watterson*[ (1991)] 234 Cal.App.3d [942,] 947, fn. 15 [286 Cal.Rptr. 13]; *People v. Scheidt* (1991) 231 Cal.App.3d 162, 165–171 [282 Cal.Rptr. 228].) Now that the question is squarely presented, we agree. In deciding whether multiple conviction is proper, a court should consider only the statutory elements. Or, as formulated in *Scheidt,* 'only a statutorily lesser included offense is subject to the bar against multiple convictions in the same proceeding. An offense that may be a lesser included offense because of the specific nature of the accusatory pleading is not subject to the same bar.' (*People v. Scheidt, supra,* at pp. 165–166.)

"The accusatory pleading test arose to ensure that defendants receive notice before they can be convicted of an uncharged crime. 'As to a lesser included offense, the required notice is given when the specific language of the accusatory pleading adequately warns the defendant that the People will seek to prove the elements of the lesser offense.' (*People v. Lohbauer, supra,* 29 Cal.3d at pp. 368–369.) 'Because a defendant is entitled to notice of the charges, it makes sense to look to the accusatory pleading (as well as the

elements of the crimes) in deciding whether a defendant had adequate notice of an uncharged lesser offense so as to permit conviction of that uncharged offense.' (*People v. Montoya, supra,* 33 Cal.4th at p. 1039 (conc. opn. of Chin, J.).) But this purpose has no relevance to deciding whether a defendant may be convicted of multiple charged offenses. '[I]t makes no sense to look to the pleading, rather than just the legal elements, in deciding whether conviction of two charged offenses is proper. Concerns about notice are irrelevant when both offenses are separately charged . . . .' (*Ibid.*)" (*Reed, supra,* 38 Cal.4th at pp. 1228–1230.)

■ The Legislature has separately defined the three offenses of which defendant was here charged and convicted—willful infliction of corporal injury on a spouse causing a traumatic condition, assault by means of force likely to produce great bodily injury, and battery with serious bodily injury. As was the case in *Reed,* "[d]efendant committed each of [the charged] crimes, albeit during the same course of conduct. The Legislature has made clear that a defendant may be convicted of more than one offense even if they arise out of the same act or course of conduct. (§ 954.) We see no reason to prohibit multiple convictions that section 954 permits simply because of the way the offenses are charged. 'To immunize' defendant from conviction of [assault by means of force likely to produce great bodily injury and battery with serious bodily injury simply because a great bodily injury enhancement was found true under the charge of infliction of corporal injury on a spouse] 'would be irrational and would frustrate the strong legislative purpose behind [all three] statutes.' (*People v. Scheidt, supra,* 231 Cal.App.3d at p. 171.)" (*Reed, supra,* 38 Cal.4th at p. 1230.)

The holding in *In re Jose H.* (2000) 77 Cal.App.4th 1090 [92 Cal.Rptr.2d 228] (*Jose H.*), on which the People expressly rely, involved closely analogous facts and is consistent with the conclusions we reached in *Reed* and reaffirm here. The *Jose H.* court concluded the juvenile court did not violate the rule against multiple convictions based on necessarily included offenses when it sustained charges of both assault with a deadly or dangerous weapon with force likely to produce great bodily injury, with a great bodily injury enhancement, and battery with serious bodily injury, also with a great bodily injury enhancement. Citing this court's holding in *Wolcott*—that enhancements may not be considered part of an accusatory pleading for purposes of defining and instructing on lesser included offenses (*Wolcott, supra,* 34 Cal.3d at pp. 96, 100–101)[4]—the *Jose H.* court reasoned that the same rule must apply for purposes of the rule against multiple convictions.

---

.[4] *Wolcott* did not involve the rule against multiple convictions, but instead held that enhancements are not considered part of an accusatory pleading for purposes of defining or instructing sua sponte on lesser offenses of which a defendant might be convicted. (*Wolcott, supra,* 34 Cal.3d at pp. 96, 100–101.)

The *Jose H.* court recognized it "must reconcile the direct, clear statute authorizing multiple convictions for 'different statements of the same offense' [(§ 954)] with the rule recognized in *Pearson* prohibiting multiple convictions based on necessarily included offenses." (*Jose H., supra*, 77 Cal.App.4th at p. 1095.) The court concluded that "section 954 appears to authorize this manner of charging and the limited case law created exception to section 954 described in *Pearson* does not prevent it. Appellant cites no cases, and our research discloses none, that permit considering enhancements for determining lesser included or necessarily included offenses for any purpose. Because the rule recognized in *Pearson* carves out an exception to a statute that appears to specifically authorize multiple convictions based on the same conduct, we decline to accept appellant's invitation to expand the definition of necessarily included offenses beyond its existing boundaries. Those boundaries limit our consideration of whether count I and count II are necessarily included offenses of one another to the elements of the offenses charged, not the stated offenses with their attached enhancements. Assault with force likely to produce great bodily injury is not a lesser included offense of battery with serious bodily injury. (*People v. Corning[, supra,]* 146 Cal.App.3d [at pp.] 89–91 . . . .) The trial court properly sustained counts I and II of the petition." (*Jose H.*, at pp. 1095–1096.)

The Court of Appeal in this case found that an additional factor—the potential for *future* multiple punishment—a factor not implicated on the facts of *Reed*, further supported its conclusion that the convictions under counts II (assault by means of force likely to produce great bodily injury) and III (battery with serious bodily injury) must be vacated under the multiple conviction rule. Although acknowledging that defendant was not being punished for those two convictions in this proceeding as he was for the conviction of willful infliction of corporal injury on a spouse under count I, the court nonetheless reasoned, "Here, although the sentences on counts two and three were stayed under Penal Code section 654, there is a serious potential consequence of multiple convictions. Because of the great bodily injury allegations, each of the offenses is a serious felony and will qualify as a strike in a subsequent prosecution for any felony. (Pen. Code, § 1192.7, subd. (c)(8); *id.*, § 667, subds. (b)–(i); *id.* § 1170.12.)" The Court of Appeal concluded that both federal double jeopardy principles and section 654 would be violated if the convictions were allowed to stand, notwithstanding that execution of sentence on those counts was stayed pursuant to section 654 in the current proceeding.

We disagree that the possibility multiple punishment might result from sentencing in unrelated *future* criminal proceedings if defendant reoffends upon his release from prison itself furnishes a basis for expanding the multiple conviction rule or undercutting the bright-line test announced in *Reed*. As regards federal double jeopardy principles, "[t]he Double Jeopardy

Clause 'protects against a *second prosecution* for the same offense after acquittal. It protects against a *second prosecution* for the same offense after conviction. And it protects against multiple punishments for the same offense.' [Citation.]" (*Brown v. Ohio* (1977) 432 U.S. 161, 165 [53 L.Ed.2d 187, 97 S.Ct. 2221], italics added.) The first two categories of protection afforded by the double jeopardy clause, by their express terms, are clearly not implicated here because we are directly concerned only with multiple convictions in a unitary trial, not multiple punishments in successive unrelated criminal proceedings. Likewise, with regard to the third category of double jeopardy protection—the prohibition of "multiple punishments for the same offense" (*ibid.*)—the Supreme Court has made clear that "[t]he [Double Jeopardy] Clause protects only against the imposition of multiple criminal punishments for the same offense . . . [citations] . . . *and then only when such occurs in successive proceedings*, see *Missouri v. Hunter*, 459 U.S. 359, 366 [74 L.Ed.2d 535, 103 S.Ct. 673] (1983)." (*Hudson v. United States* (1997) 522 U.S. 93, 99 [118 S.Ct. 488, 139 L.Ed.2d 450], italics added, original italics omitted.)

Federal law, like California statutory law, clearly recognizes that cumulative punishment may be imposed under two statutes, even where they proscribe the same conduct, if the Legislature has specifically authorized cumulative punishment. (*Missouri v. Hunter* (1983) 459 U.S. 359, 368–369 [74 L.Ed.2d 535, 103 S.Ct. 673].) Our Legislature has separately defined the three offenses of which defendant was convicted, separately prescribed an enhancement for personal infliction of great bodily injury under circumstances involving domestic violence (§ 12022.7, subd. (e)), and made clear that a person may be convicted of more than one crime arising out of the same act or course of conduct in a unitary criminal proceeding. (§ 954). In short, federal double jeopardy principles do not support the rationale and holding of the Court of Appeal's conclusions below.

With regard to whether section 654's proscription against multiple punishment for offenses arising out of the same act or course of conduct would be violated if multiple convictions in a unitary trial were later used to impose punishment under a sentencing scheme like the Three Strikes law in *future* unrelated criminal proceedings, we have twice before indicated that the question must await an appropriate case in which it is factually and squarely presented. (See *People v. Sanchez, supra*, 24 Cal.4th at p. 993; *People v. Benson* (1998) 18 Cal.4th 24, 36 & fn. 8 [74 Cal.Rptr.2d 294, 954 P.2d 557].)[5] In this case there is no evidence before us that defendant has

---

[5] The decision in *Benson* made clear that the mere fact that a conviction was *stayed* pursuant to section 654 in an earlier proceeding does not in itself preclude use of the conviction as a strike under the Three Strikes law in a subsequent proceeding. We observed that the language of the Three Strikes law (§ 1170.12, subd. (b)(1)) "unequivocally establishes that the electorate

reoffended or faces the prospect of multiple punishment due to sentencing in any unrelated criminal proceeding. The mere possibility of future multiple punishment affords no sound basis for disregarding the mandate of section 954, which clearly permits *multiple convictions* arising from the same act or course of conduct in the present criminal proceeding. The possibility of future multiple punishment is always speculative, yet the holding of the Court of Appeal in this case would require that multiple convictions otherwise permissible under section 954 must always be vacated in a present criminal proceeding simply because they may lead to future impermissible multiple punishment *if* the defendant reoffends, and *if* the prosecution then seeks to use those convictions as a basis for sentence enhancement in the future criminal proceeding.

Moreover, multiple convictions permitted under section 954 serve an important and legitimate function in criminal sentencing. Where one of two multiple convictions valid under section 954 is overturned on appeal or habeas corpus, the remaining and intact conviction, even though it arose from the same facts or indivisible course of conduct as the conviction that is being reversed, may be substituted in its stead, with the stay of execution of sentence lifted at resentencing, so that punishment on the valid conviction can be imposed in the interests of justice. This legitimate future use of multiple convictions would be undermined by the expanded multiple conviction rule adopted by the Court of Appeal in this case.

Last, defendant argues that under the high court's holding in *Apprendi v. New Jersey* (2000) 530 U.S. 466 [147 L.Ed.2d 435, 120 S.Ct. 2348] (*Apprendi*), and this court's decision in *People v. Seel* (2004) 34 Cal.4th 535 [21 Cal.Rptr.3d 179, 100 P.3d 870] (*Seel*), which interpreted and applied *Apprendi* in the context of the federal double jeopardy clause, enhancements must be considered in connection with the multiple conviction rule. In the companion case of *People v. Izaguirre* (2007) 42 Cal.4th 126 (*Izaguirre*), also filed today, we have rejected the identical argument. (*Izaguirre, supra,* at pp. 128–129.)

█ Briefly, in *Apprendi, supra,* 530 U.S. 466, the high court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." (*Id.* at p. 490.) The rule of *Apprendi* is grounded on the reasoning that "[t]he federal Constitution

---

intended to qualify as separate strikes *each* prior conviction that a defendant incurred relating to the commission of a serious or violent felony, notwithstanding the circumstance that the trial court, in the earlier proceeding, may have stayed sentence on one or more of the serious or violent felonies under compulsion of the provisions of section 654." (*People v. Benson, supra,* 18 Cal.4th at p. 31.)

requires the elements of a crime to be proved beyond a reasonable doubt *because they expose the defendant to punishment*; likewise, the elements of a sentence enhancement must be proved beyond a reasonable doubt if there is exposure to *increased* punishment. [Citations.]" *(People v. Sengpadychith* (2001) 26 Cal.4th 316, 325–326 [109 Cal.Rptr.2d 851, 27 P.3d 739].) The rule is compelled by the federal Constitution's Fifth Amendment right to due process and Sixth Amendment right to jury trial, made applicable to the states through the Fourteenth Amendment. (26 Cal.4th at p. 324.) It is *not* grounded on principles of double jeopardy protection. (See *Izaguirre, supra*, 42 Cal.4th at pp. 132–134.)

Here, as in *Izaguirre*, all of the enhancement allegations in question were submitted to the jury and proved true beyond a reasonable doubt. There is no Fifth or Sixth Amendment violation within the meaning of the high court's holding in *Apprendi, supra*, 530 U.S. 466. Beyond that, *Izaguirre* explains in detail why the decision in *Seel, supra*, 34 Cal.4th 535, which interpreted *Apprendi*'s holding in the specific context of the federal double jeopardy clause's *prohibition against a second prosecution for the same offense after acquittal*, has no bearing on the claim, raised in *Izaguirre* and this case, that federal double jeopardy principles require enhancements to be considered when applying the multiple conviction rule to necessarily included offenses. (See *Izaguirre, supra*, 42 Cal.4th at pp. 132–134.) Neither this case nor *Izaguirre* involves a second prosecution for the same offense after acquittal. Nothing in the federal double jeopardy clause, *Apprendi*, or *Seel* supports the conclusions and holding of the Court of Appeal below.

The expanded multiple conviction rule adopted by the Court of Appeal, which would require consideration of enhancements in applying that rule, contradicts section 954, which clearly authorizes multiple convictions on the facts of this case. It further conflicts with the rationale and holding of *Reed, supra*, 38 Cal.4th 1224, and misconstrues federal double jeopardy law. Moreover, this case, properly viewed, implicates the multiple conviction rule as applied in the present proceeding, not section 654's ban on multiple punishment as it might come into play in future criminal proceedings.

CONCLUSION

The judgment of the Court of Appeal is reversed, and the matter remanded to that court for further proceedings consistent with the views expressed herein.

George, C. J., Kennard, J., Werdegar, J., Chin, J., and Corrigan, J., concurred.

**MORENO, J.,** Concurring.—The majority in *People v. Reed* (2006) 38 Cal.4th 1224 [45 Cal.Rptr.3d 353, 137 P.3d 184] held that a court never may consider the language of the accusatory pleading in determining whether multiple convictions are proper. The majority concluded that the defendant in that case properly was convicted of being a felon in possession of a firearm, carrying a concealed firearm, and carrying a loaded firearm in public, despite the circumstance that the counts charging him with carrying a concealed weapon and carrying a loaded weapon in public alleged that the defendant was a felon. Applying its broad new rule that the language of the accusatory pleading never may be considered in determining whether multiple convictions are precluded because the offenses are necessarily included within each other, the majority held that multiple convictions were proper in *Reed* because a person who carries a concealed weapon, or carries a loaded weapon in public, does not necessarily also commit the crime of being a felon in possession of a firearm.

I wrote a concurring and dissenting opinion in *Reed* that reached the same result as the majority but used different reasoning. I disagreed that the language of the accusatory pleading never should be considered in determining whether a defendant improperly had been convicted of necessarily included offenses. I agreed, however, that the allegations that the defendant in *Reed* was a felon should not be considered in determining whether multiple convictions were proper because being a felon was not an element of the crimes of carrying a concealed weapon or carrying a loaded weapon in public. (*People v. Reed, supra,* 38 Cal.4th 1224, 1235 (conc. & dis. opn. of Moreno, J.).) The circumstance that the defendant in *Reed* was a felon was alleged in the counts charging him with carrying a concealed weapon and carrying a loaded weapon in public in order to permit these crimes to be punished as felonies rather than misdemeanors. (*Id.* at p. 1234 (conc. & dis. opn. of Moreno, J.).) I thus reached the same result as the majority based in large part upon the rule we announced in *People v. Wolcott* (1983) 34 Cal.3d 92 [192 Cal.Rptr. 748, 665 P.2d 520] "that allegations of sentencing enhancements should not be considered in applying the accusatory pleading test to determine a trial court's sua sponte duty to instruct the jury regarding lesser included offenses." (*People v. Reed, supra,* 38 Cal.4th 1224, 1235 (conc. & dis. opn. of Moreno, J.).)

In the present case, the majority relies upon this court's decision in *People v. Reed, supra,* 38 Cal.4th 1224, as well as our decision in *People v. Wolcott, supra,* 34 Cal.3d 92, to hold that enhancement allegations may not be considered for purposes of the rule prohibiting multiple convictions based on necessarily included offenses. In my view, our decision in *Wolcott* controls here and, for that reason, I reach the same result as does the majority without the need to apply the broad rule created in *Reed* that the language of the accusatory pleading never may be considered in determining whether multiple convictions are permitted.

Appellant's petition for a rehearing was denied October 31, 2007.