Filed 12/22/15  P. v. Sphabmixay CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. THONGSAVATH SPHABMIXAY, Defendant and Appellant. | D067329 (Super. Ct. No. SCD247285) |

APPEAL from a judgment of the Superior Court of San Diego County, Louis R. Hanoian, Judge.  Affirmed in part, reversed in part, and remanded with directions.

George L. Schraer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Sharon L. Rhodes and Seth M. Friedman, Deputy Attorneys General, for Plaintiff and Respondent.

In early April 2013, Thongsavath Sphabmixay (Sphabmixay) set fire to the two-story house his sister, Pamela Sphabmixay (Pamela),[1] owned in the Mira Mesa area of San Diego. Sphabmixay lived in the house with Pamela, their mother Bouakham Sphabmixay (Bouakham), and a renter, Dennis Pham. They were all inside the house when Sphabmixay set the fire. Although Pamela and Bouakham were alive when they arrived at the hospital, they later died of smoke inhalation.

A jury convicted Sphabmixay of two counts of first degree murder (counts 1 [victim: Bouakham] & 2 [victim: Pamela]: Pen. Code,[2] §§ 187, subd. (a), 189), one count of attempted first degree murder (count 3 [victim: Pham]: §§ 187, subd. (a), 189, 664), and one count of arson of an inhabited structure (count 4: § 451, subd. (b) (§ 451(b)).

With respect to each of the two murder counts, the jury found to be true a special circumstance allegation that Sphabmixay committed the murder during the commission of arson within the meaning of section 190.2, subdivision (a)(17)(H) (section 190.2(a)(17)(H); see fn. 4, *post*). In addition, the jury found to be true a special circumstance allegation that Sphabmixay committed multiple murders within the meaning of section 190.2, subdivision (a)(3).

The court sentenced Sphabmixay to consecutive prison terms of life without the possibility of parole for the two murder convictions, plus a consecutive term of seven

1      Because Sphabmixay, his sister, and their mother shared the same last name, in the interest of brevity and clarity we refer to Sphabmixay's relatives by their first names.

2      All further statutory references are to the Penal Code.

years to life for the attempted murder conviction, plus the upper term of eight years for the arson conviction, which the court stayed under section 654.

The court also ordered Sphabmixay to pay $179,380.02 in victim restitution to Pamela's estate under section 1202.4, subdivision (f)). In addition, the court imposed but suspended a $10,000 parole revocation restitution fine under section 1202.45.

Sphabmixay raises three contentions on appeal. First, he contends his arson conviction must be reversed because arson is a lesser included offense of what he refers to as "murder with an arson special circumstance," he was convicted in this case of both arson and "murder with an arson special circumstance," and a defendant cannot lawfully be convicted of both a greater offense and a lesser included offense. Second, he contends the court erred in ordering him to pay restitution to Pamela's estate for the fire damage to her house. Third, he contends—and the Attorney General agrees—the parole revocation restitution fine the court imposed under section 1202.45 should be stricken because the court sentenced him to life in prison without the possibility of parole.

We modify the judgment by striking the parole revocation restitution fine. We affirm the judgment in all other respects and remand the matter with directions to amend the abstract of judgment to reflect the striking of that fine.

DISCUSSION[3]

## I. *ARSON IS NOT A LESSER INCLUDED OFFENSE OF MURDER WITH AN ARSON SPECIAL CIRCUMSTANCE*

Sphabmixay contends his count 4 arson conviction must be reversed because (1) "arson is a lesser included offense of murder with an arson special circumstance and a defendant cannot be convicted of both a greater offense and a lesser included offense"; and (2) his arson offense is a lesser included offense of the murder offenses charged in counts 1 and 2, which he variously refers to as "murder with an arson special circumstance," "the offense of murder that is eligible for a sentence of life without parole (LWOP)," and "LWOP-eligible murder during an arson." This contention is without merit.

### A. *Background*

The information charged Sphabmixay with two counts of first degree murder (count 1 & 2). In each murder count, the information alleged an arson special circumstance that "the murder . . . was committed by [Sphabmixay] . . . while [he] was engaged in the commission and attempted commission of the crime of Arson, in violation of [section] 45l(b), within the meaning of section 190.2(a)(l7)[(H)]."[4] (CT 6.)

---

[3]  Because the underlying facts of this case are not pertinent to the issues raised in this appeal, we need not summarize them.

[4]  Section 190.2(a)(17)(H) provides: "(a) The penalty for a defendant who is found guilty of murder in the first degree is *death or imprisonment in the state prison for life without the possibility of parole* if one or more of the following special circumstances has been found under Section 190.4 to be true:  [¶] . . . [¶] (17) The murder was committed while the defendant was engaged in, or was an accomplice in, the commission of,

4

In addition, the information separately charged Sphabmixay with one count of arson of an inhabited structure or property in violation of section 451(b) (count 4).

The jury found Sphabmixay guilty of the two murder counts and found to be true the arson special circumstance alleged in each count. The jury also found him guilty of arson.

B. *Applicable Legal Principles*

Section 954 generally permits multiple convictions for different offenses arising out of the same act or course of conduct.[5] (*People v. Reed* (2006) 38 Cal.4th 1224, 1226-1227 (*Reed*).)

"However, an exception to this general rule allowing multiple convictions prohibits multiple convictions based on necessarily included offenses." (*People v. Medina* (2007) 41 Cal.4th 685, 701 (*Medina*).) This exception prohibiting a conviction of both a greater offense and a necessarily included lesser offense is based on the rationale that if the greater offense cannot be committed without committing the lesser, conviction of the greater is also conviction of the lesser, and thus to permit conviction of both offenses would allow the defendant to be convicted twice of the lesser offense. (*Id.*

---

attempted commission of, or the immediate flight after committing, or attempting to commit, the following felonies: [¶] . . . [¶] (H) *Arson in violation of subdivision (b) of Section 451*." (Italics added.)

[5] Section 954 provides in part that "[a]n accusatory pleading may charge two or more different offenses connected together in their commission, or different statements of the same offense" and "the defendant may be convicted of any number of the offenses charged."

at p. 702.)  There is no reason to permit the defendant to be convicted twice of the lesser included offense.  (*Ibid*.)

Although two tests traditionally had been used to identify necessarily included offenses—the elements test and the accusatory pleading test—it is now established that courts must apply only the statutory elements test when deciding whether a defendant may be convicted of multiple *charged* crimes.  (*Reed*, *supra*, 38 Cal.4th at pp. 1227-1228, 1231.)

"Under the elements test, if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former."  (*Reed*, *supra*, 38 Cal.4th at p. 1227.)  Thus, a lesser offense is necessarily included within a greater offense if the greater offense cannot be committed without also committing the lesser offense.  (*People v. Montoya* (2004) 33 Cal.4th 1031, 1034 (*Montoya*).)

In *People v. Wolcott* (1983) 34 Cal.3d 92 (*Wolcott*), the California Supreme Court held a trial court may not consider sentencing enhancement allegations in determining whether an offense is a lesser included offense.  (*Id*. at p. 101.)  In *Wolcott*, which involved a firearm use enhancement, our high state court reasoned in part that California courts had consistently stated that an enhancement statute does not prescribe a new offense; it prescribes "'merely additional punishment for an offense.'"  (*Id*. at p. 100.) The *Wolcott* court also reasoned that the "orderly, step-by-step" process of criminal trials would become "muddled" if the trier of fact had to consider "evidence of the enhancement . . . in determining guilt of a lesser offense."  (*Id*. at p. 101.)  The Supreme

6

Court explained that "[p]resent procedure contemplates that the trier of fact first determines whether the defendant is guilty of the charged offense or a lesser included offense, and only then decides the truth of any enhancements." (*Ibid*.)

In *People v. Sloan* (2007) 42 Cal.4th 110 (*Sloan*), the California Supreme Court reaffirmed the "long standing rule" in *Wolcott* (the *Wolcott/Sloan* rule) that "enhancements may not be considered as part of an accusatory pleading for purposes of identifying lesser included offenses." (*Sloan*, at p. 114.)

C. *Analysis*

The question we must decide is whether the jury's true findings on the section 190.2(a)(17)(H) arson special circumstance allegations in the two murder counts render Sphabmixay's arson offense a lesser included offense of those murders such that his arson conviction must be reversed under the rule prohibiting a conviction of both a greater offense and a necessarily included lesser offense (see *Medina*, *supra*, 41 Cal.4th at p. 701). We answer the question in the negative because (1) the true findings on the arson special circumstance allegations attached to the murder counts are akin to a true finding on a sentence enhancement allegation in that they enhance—or, in Sphabmixay's words, make "more severe"—the penalty for Sphabmixay's first degree murder offenses, and thus (2) the *Wolcott/Sloan* rule (discussed, *ante*) applies and renders the true findings on the arson special circumstance allegations irrelevant to the determination under the statutory elements test of whether Sphabmixay's arson offense is a lesser included offense of his murder offenses.

Sphabmixay acknowledges the issue of whether his arson offense is a lesser included offense of the murder offenses charged in counts 1 and 2 must be decided through application of the statutory elements test. (See *Reed*, *supra*, 38 Cal.4th at p. 1231.) Under that test, "if the statutory elements of the greater offense include all of the statutory elements of the lesser offense, the latter is necessarily included in the former." (*Id*. at p. 1227.) Sphabmixay also acknowledges that a lesser offense is necessarily included within a greater offense if the greater offense cannot be committed without also committing the lesser offense. (See *Montoya*, *supra*, 33 Cal.4th at p. 1034.)

Sphabmixay does not contend, nor could he properly assert, that the statutory elements of arson are necessarily included in the statutory elements of murder, or that murder cannot be committed without also committing arson. It is obvious a person can commit murder without also committing arson.

In his attempt to persuade this court that arson is a lesser included offense of his murder offenses, Sphabmixay asserts "arson is a lesser included offense of a count charging murder and an arson special circumstance." He states: "The charged offense [in counts 1 and 2] was *not simple murder*. It was *murder with an arson special circumstance*." (Italics added.)

In support of his contention that the crimes charged in counts 1 and 2 were not murder, but another crime called "murder with an arson special circumstance," Sphabmixay seeks to avoid the *Wolcott/Sloan* rule─that "enhancements may not be considered as part of an accusatory pleading for purposes of identifying lesser included offenses" (*Sloan*, *supra*, 42 Cal.4th at p. 114)─by asserting "the arson special

8

circumstance is not an enhancement that is irrelevant to the nature of the charged offense, and the rationales for treating it as irrelevant do not apply." He asserts the arson special circumstance charged in those counts "is, instead, an element" of "murder with an arson special circumstance."

In support of his contentions that an arson special circumstance under section 190.2(a)(17)(H) is not a sentence enhancement for purposes of the *Wolcott/Sloan* rule, and that it should be considered an element of "murder with an arson special circumstance," Sphabmixay attempts to distinguish a special circumstance from an enhancement. Specifically, he asserts "[a]n enhancement is defined [under rule 4.405(3) of the California Rules of Court] as 'an additional term of imprisonment added to the base term,'" whereas under section 190.2, subdivision (a) (see fn. 4, *ante*), a special circumstance attached to a first degree murder charge subjects the defendant to the penalty of death or imprisonment in the state prison for life without the possibility of parole, which (he asserts) "is a *more severe sentence* than the one applicable to ordinary first degree murder" (italics added). He asserts "a special circumstance does not add a term of imprisonment to the term for first degree murder. It instead removes the possibility of release [from prison]."

In response the Attorney General argues Sphabmixay is making "a distinction without a difference." We agree. The arson special circumstances alleged in counts 1 and 2 under section 190.2(a)(17)(H) do not transform the crime of first degree murder charged in those counts into a new crime Sphabmixay refers to as "murder with an arson special circumstance." The crime charged in counts 1 and 2 is "willful, deliberate and

9

premeditated" (first degree) murder (§§ 189, 187, subd. (a), 189). The jury's true findings on the arson special circumstance allegations attached to those murder counts are akin to a true finding on a sentence enhancement allegation in that, under section 190.2(a)(17)(H), the jury's true findings enhance—or, in Sphabmixay's words, make "more severe"—the penalty for his first degree murder offenses. Citing section 190, subdivision (a), Sphabmixay correctly asserts "[t]he term for ordinary first degree murder is 25 years to life."[6] However, a true finding on an arson special circumstance allegation enhances or makes more severe the penalty for a first degree murder conviction by imposing the penalty of either death or imprisonment without the possibility of parole. (§ 190.2(a)(17)(H).)

Sphabmixay cites no statutory or decisional authority, and we are aware of none, holding that a court is to consider a murder special circumstance allegation in determining whether another charged offense is necessarily included in the charged murder. In support of his contention that an arson special circumstance is not an enhancement, Sphabmixay principally relies on *People v. Montes* (2014) 58 Cal.4th 809 in which the Supreme Court stated that "'special circumstances are *sui generis*—neither a crime, an enhancement, nor a sentencing factor.'" (*Id*. at p. 874.) Sphabmixay's reliance on *Montes* is misplaced because he quotes *Montes* out of context and because that case

---

6      Subdivision (a) of section 190 provides in part:  "Every person guilty of murder in the first degree shall be punished by death, imprisonment in the state prison for life without the possibility of parole, or *imprisonment in the state prison for a term of 25 years to life*.  The penalty to be applied shall be determined as provided in Sections 190.1, 190.2, 190.3, 190.4, and 190.5." (Italics added.)

10

does not hold that a court is to consider a murder special circumstance allegation in determining whether another charged offense is necessarily included in a charged murder. (See *Montes*, at pp. 874-875.)

This court has explained that "a special circumstance is a *penalty enhancement*." (*People v. Superior Court* (*Jurado*) (1992) 4 Cal.App.4th 1217, 1231, italics added.) Citing *Wolcott*, *supra*, 34 Cal.3d at page 101, we also explained in *Jurado* that "[p]enalty enhancements are not part of the greater or lesser offense analysis." (*Jurado*, p. 1231.) We further explained that "[i]n California criminal procedure special circumstances are decided during the guilt phase, *after* a verdict of first degree murder has been reached by the jury." (*Ibid.*, italics added, citing *People v. Odle* (1988) 45 Cal.3d 386, 411, fn. 11, disapproved on another ground as recognized in *People v. Prieto* (2003) 30 Cal.4th 226, 256.)

Here, the verdict forms for counts 1 and 2 support our conclusion that the arson special circumstance alleged in each of those first degree murder counts is *not* an element of those murders. Those verdict forms show the jury properly followed the "orderly, step-by-step [criminal trial] procedure" (*Wolcott*, *supra*, 34 Cal.3d at p. 101) by deciding the arson special circumstance allegations "after a verdict of first degree murder ha[d] been reached by the jury" (*Jurado*, *supra*, 4 Cal.App.4th at p. 1231). Specifically, the jury returned separate verdicts finding Sphabmixay guilty of first degree murder as charged in counts 1 and 2. As to each of those counts, after the jury found Sphabmixay guilty, the jury returned a separate verdict finding the arson special circumstance allegation was true.

11

Because each arson special circumstance is the functional equivalent of a sentence enhancement and is not an element of the first degree murders charged in counts 1 and 2, we conclude the *Wolcott/Sloan* rule applies so as to render the jury's true findings on the arson special circumstance allegations irrelevant to the determination under the statutory elements test of whether Sphabmixay's count 4 arson offense is a lesser included offense of his murder offenses. (See *Sloan*, *supra*, 42 Cal.4th at p. 114.) We also conclude Sphabmixay's arson offense is *not* a lesser included offense of his murder offenses, and thus the necessarily included offense rule prohibiting a conviction of both a greater offense and a necessarily included lesser offense does not apply. Accordingly, we affirm Sphabmixay's arson conviction.

## II. *RESTITUTION TO PAMELA'S ESTATE*

Sphabmixay next contends the court erred in ordering him to pay restitution in the amount of $179,380.02 to his sister Pamela's estate for the fire damage to her house. He complains that, as a matter of law, Pamela's estate was not a direct victim of Sphabmixay's arson offense within the meaning of the restitution statute (§ 1202.4). We reject Sphabmixay's contention.

A. *Legal Principles* (*Victim Restitution*)

In *People v. Sy* (2014) 223 Cal.App.4th 44, this court recently explained that "[t]he California Constitution gives crime victims a right to restitution and, consequently, requires a court to order a convicted wrongdoer to pay restitution in every case in which a crime victim suffers a loss." (*Id.* at p. 62, citing Cal. Const., art. I, § 28, subd. (b)(13)(B).) "To implement this requirement, section 1202.4, subdivision (f), generally

provides that 'in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court.'" (*Sy*, at p. 62.)

We also explained in *Sy* that "[a] victim includes '[a] corporation, business trust, *estate*, trust, partnership, association, joint venture, government, governmental subdivision, agency, or instrumentality, or any other legal or commercial entity when that entity is a direct victim of a crime.'" (*Sy*, *supra*, 223 Cal.App.4th at p. 62, quoting § 1202.4, subd. (k)(2), italics added.) "A direct victim is a victim against whom a defendant has committed a crime." (*Sy*, at pp. 62-63.)

"Ordinarily, the standard of review of a restitution order is abuse of discretion." (*People v. Williams* (2010) 184 Cal.App.4th 142, 146.) "However, when the propriety of a restitution order turns on the interpretation of a statute, a question of law is raised, which is subject to de novo review on appeal." (*Ibid*.)

B. *Analysis*

In *People v. Runyan* (2012) 54 Cal.4th 849 (*Runyan*), the California Supreme Court explained that "a deceased victim's estate may, in appropriate cases, receive restitution [under section 1202.4]. When the actual victim of a crime has died, the estate, acting in the decedent's stead, steps into the decedent's shoes to collect restitution owed to the decedent, but which the decedent cannot personally receive because of his or her death. Thus, a decedent's estate—or, more precisely, its executor or administrator as the decedent's personal representative—is a proper recipient, on the decedent's behalf, of

13

restitution owed to the decedent, as an actual and immediate crime victim, for economic losses the decedent incurred as a result of the defendant's offenses against the decedent." (*Runyan*, at p. 857, italics omitted.)

Applying *Runyan*, we conclude the court properly ordered Sphabmixay to pay victim restitution to Pamela's estate under section 1202.4. Sphabmixay set the fire and damaged Pamela's house before she perished. Sphabmixay would have owed direct victim restitution to Pamela had she survived the fire. Pamela's estate, "acting in [her] stead, step[ped] into [her] shoes to collect restitution owed to the [her], but which [she could not] personally receive because of . . . her death." (*Runyan*, *supra*, 54 Cal.4th at p. 857, italics omitted.)

We reject Sphabmixay's unsupported suggestion that no reimbursable economic loss occurred because Pamela's insurer paid for the repair of her damaged house. "Payments received by a crime victim from his or her insurance company or from an independent third party for economic losses suffered as a result of the defendant's criminal conduct cannot reduce the amount of restitution the defendant owes." (*People v. Vasquez* (2010) 190 Cal.App.4th 1126, 1133-1134; see § 1202.4, subd. (f)(2) ["Determination of the amount of restitution ordered pursuant to this subdivision shall not be affected by the indemnification or subrogation rights of a third party."].)

Accordingly, we affirm the restitution order.

### III. *PAROLE REVOCATION RESTITUTON FINE*

Last, Sphabmixay contends the parole revocation restitution fine the court imposed under section 1202.45 should be stricken because the court sentenced him to life

14

in prison without the possibility of parole. The Attorney General acknowledges that fine should be stricken. We agree. (*People v. McWhorter* (2009) 47 Cal.4th 318, 380.) Accordingly, we shall order the fine stricken and the judgment modified to so reflect.

DISPOSITION

The parole revocation restitution fine imposed under section 1202.45 is ordered stricken. In all other respects the judgment is affirmed. The matter is remanded with directions that the superior court prepare an amended abstract of judgment to reflect the modification of the judgment striking the parole revocation restitution fine and forward a certified copy of the corrected abstract to the Department of Corrections and Rehabilitation.

NARES, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

15